880 P.2d 310

**In the Matter of Carl J. SCHMIDT, Esq., an Attorney Licensed to Practice Law in the Courts of the State of New Mexico.**

**No. 22128.**

Supreme Court of New Mexico.

Sept. 7, 1994.

Sally E. Scott, Albuquerque, for Disciplinary Bd.

Jay L. Faurot, Farmington, for respondent.

**OPINION**

PER CURIAM.

This matter came before the Court for consideration of the recommendation of the Disciplinary Board that the discipline set forth in a conditional agreement not to con-

---

fully compensated for the loss and the benefit to the promisor from the breach may provide soci-

ety with a net gain...").

test and consent to discipline executed by Carl J. Schmidt be imposed by this Court. The consent to discipline provides for a three-year suspension, the second and third years of which would be deferred if Schmidt satisfies a series of conditions set forth in the agreement. In the event Schmidt satisfies all conditions during the first year of his suspension, he would be placed on supervised probation during the remaining two years of suspension. The Court has determined that imposing the discipline set forth in the agreement is appropriate.

This proceeding arose out of a real estate transaction involving a New Mexico corporation, A and L Associates, Inc., owned by Luther Miller and Al Wood. Schmidt performed legal work for both of these men for many years. Except for bills submitted early in the relationship, Schmidt made no claim for legal fees until the events occurred that are the subject of this proceeding.

The legal services Schmidt performed for Miller and Wood included the incorporation of A and L Associates, Inc. Although Schmidt performed the incorporation, no stock was ever issued and no minutes of corporate meetings were kept. Miller claimed that only he and Wood had an ownership interest in A and L. Schmidt claimed that Wood promised him an ownership interest in the corporation as repayment for legal services he had performed and that he was an officer in the corporation, although no documents reflected that Schmidt had an ownership interest in the corporation.

The only asset of A and L was a parcel of land on Central Avenue in Albuquerque. This land was deeded to the corporation by Al Wood, who had owned it for many years. For several years, unsuccessful efforts were made to develop the property. Schmidt had some involvement in these efforts. On February 5, 1992, after the property had been listed for sale, Schmidt, purporting to act as the Secretary/Vice-President of A and L, issued a deed for the property to a third person. The deed was recorded on February 10, 1992. Schmidt also had the person to whom he deeded the property execute a deed to the property to his son. That deed was recorded by Schmidt on September 14, 1992.

Schmidt transferred the property without the knowledge or consent of Miller, Wood, or A and L. In the summer of 1992, Miller entered into a contract for the sale of the property. Shortly before a closing scheduled for July of 1992, the title company notified Miller that title to the property was no longer held by A and L.

When Miller demanded that Schmidt deed the property back to A and L, Schmidt threatened to reveal confidential information he had learned in the course of representing Miller. Schmidt refused to return the property to A and L unless Miller agreed to pay him a portion of the proceeds from the sale.

In September of 1992, when efforts failed to convince Schmidt to have the property deeded back to A and L, Miller, the Estate of Al Wood (Wood died in June of 1992), and A and L filed suit against Schmidt and others who might claim an interest in or have a lien against the A and L property. In that suit, Schmidt claimed Wood had granted him a one-third interest in the property in return for negotiating the release of liens and litigating a quiet title action to remove several clouds on the title to the property. Schmidt also claimed that Miller had no interest in the property or in A and L and asserted counterclaims for attorney's fees against Miller, the Estate of Wood, and A and L. A court order was entered voiding the deeds Schmidt had drafted to the property. Subsequently, after trial on the merits, Schmidt was determined to have no interest in the property. Schmidt also failed on his counterclaim for attorney's fees.

■ The specification of charges filed in this proceeding charged Schmidt with violating the following Rules of Professional Conduct: SCRA 1986, 16–102(A), by failing to abide by the client's decisions concerning the objectives of the representation; SCRA 1986, 16–104(A), by failing to inform the client about the status of the representation; SCRA 1986, 16–106, by revealing information relating to the representation of a client without the client's consent; SCRA 1986, 16–108(A), by engaging in a prohibited business transaction with a client; SCRA 1986, 16–801(A), by knowingly making a false state-

ment of material fact in connection with a disciplinary proceeding; SCRA 1986, 16–804(C), by engaging in conduct involving dishonesty, deceit, and misrepresentation; and SCRA 1986, 16–804(H), by engaging in conduct reflecting adversely on his fitness to practice law. By entering into the conditional agreement not to contest and consent to discipline, Schmidt agrees not to contest these charges, in exchange for the discipline recited above.

Assuming arguendo Schmidt's claim of having an ownership interest in A and L or its real property, the uncontested charges reflect serious misconduct by Schmidt. If Schmidt had such an interest, he violated SCRA 1986, 16–108(A), by failing to comply with the requirements for entering into a business transaction with a client. Most notably, Schmidt failed to obtain the client's written consent to the alleged transaction. Of a more serious nature was the action taken by Schmidt when he learned the property had been placed for sale. Schmidt could have taken a legitimate course of action to assert a claim. For a licensed lawyer to resort to issuing false and unauthorized deeds to protect an asserted interest in a client's property is antithetical to a lawyer's duties to the client and the legal system.

■ In the consent to discipline agreement, Schmidt acknowledged that, in 1983, he received an informal admonition for violating one of the rules he has agreed not to contest in this proceeding, SCRA 1986, 16–108. Pursuant to SCRA 1986, 17–308, the fact Schmidt had been admonished for the same conduct within the last ten years is relevant to the determination of the appropriate discipline to be imposed in this case. Repeated instances of the same conduct for which a lawyer previously has been disciplined generally will result in more severe discipline. *In re Rivera,* 112 N.M. 217, 218, 813 P.2d 1015, 1016 (1991). Application of this doctrine is necessary to protect the lawyer's clients, the public, and the legal system. *In re Tapia,* 108 N.M. 650, 652, 777 P.2d 378, 380 (1989). Suspension or disbarment is especially appropriate in a case where the lawyer has engaged in deceptive conduct. *See In re Siler,* 106 N.M. 292, 293, 742 P.2d 504,

505 (1987); *In re Hartley,* 107 N.M. 376, 377, 758 P.2d 790, 791 (1988).

In order to have the second and third years of his suspension deferred in favor of a supervised probation, Schmidt shall return all client files and property belonging to Miller, the Estate of Wood, and A and L to Miller; undergo a psychological evaluation by a psychologist or psychiatrist selected or approved by disciplinary counsel; comply with the recommendations of the psychological evaluation; take and pass the multi-state professional ethics examination; and make restitution to Miller of in the amount of $50.00 per month in satisfaction of the damage judgment Miller obtained against Schmidt in the suit concerning the A and L property. Restitution payments began on June 24, 1994, after our approval of Schmidt's consent to discipline.

The procedure governing a consent to discipline agreement is set forth in SCRA 1986, 17–211. The attorney conditionally admits or agrees not to contest the charges, pending approval of the agreement by the disciplinary board or Court, depending on the discipline to be imposed. In the case of suspension, which can only be ordered by this Court, the agreement, after being considered by a hearing committee and the disciplinary board, is filed with this Court, along with the board's recommendations. Upon our approval of an agreement, the discipline provided for in the agreement is imposed by this Court. Although the respondent consents to the discipline set forth in the agreement, the discipline becomes effective upon order of this Court, similar to the imposition of suspension following a contested disciplinary proceeding. Strict compliance with the terms of the consent agreement is required as with any discipline imposed by this Court.

**IT IS THEREFORE ORDERED** that Carl J. Schmidt be suspended from the practice of law in the state of New Mexico for three years, effective May 24, 1994;

**IT IS FURTHER ORDERED** that the second and third years of this suspension be deferred and that Schmidt be placed upon supervised probation during the period of deferred suspension, provided that Schmidt

complies with all terms and conditions set forth below:

1. Schmidt shall immediately return to Luther Miller all client files, documents, and computer-stored information related to his representation of Luther Miller, A and L Associates, Inc., and (the estate of) Al Wood in his possession and control. All copying of these files and documents shall be at Schmidt's expense. Schmidt represents and warrants that the documents returned to Miller include all documents provided to him by Miller, or which he himself generated or received from other sources, regarding Miller's tax matters. Schmidt shall deliver these items by tendering them to Ronald Taylor, Esq., Miller's attorney.

2. Within sixty (60) days of the effective date of his suspension, May 24, 1994, Schmidt shall undergo a psychological evaluation by a psychologist or psychiatrist selected by or approved by disciplinary counsel. Schmidt shall bear the cost of this evaluation. Disciplinary counsel shall receive a copy of the evaluation. The evaluation shall set forth recommendations, if any, for ongoing treatment.

3. Schmidt shall comply with all recommendations of the psychological evaluation at his own expense.

4. Schmidt shall take and pass the multi-state professional ethics examination and provide disciplinary counsel with proof of the results prior to the conclusion of his one-year suspension.

5. Beginning on June 24, 1994, and continuing throughout the period of his suspension and probation, Schmidt shall make restitution payments of fifty dollars ($50.00) per month to Miller in reduction of the actual damages portion of the judgment entered in Miller's favor and against Schmidt in *Miller, et al. vs. Schmidt, et al.,* case no. CV 92–08241, Second Judicial District. Such payments shall be made by Schmidt's tendering to Miller, or an agent Miller designates in writing, a cashier's check, certified check, or money order, on or before the fifth day of each month. A copy of each payment shall be furnished to disciplinary counsel by the tenth day of each month. Failure to remain in full compliance with this requirement shall result in forfeiture by Schmidt of deferral of the probationary period, or any portion of the probationary period remaining at the time of the default, and the reinstitution of Schmidt's suspension for the entire period of probation or any portion thereof remaining at the time of the default. This obligation shall not be extinguished by any bankruptcy proceeding instituted by Schmidt, nor is this order intended to limit Miller's right to collect on the judgment by all means permitted by law. Schmidt's restitution obligation shall terminate only upon completion of the suspension and probation periods or upon the filing of a release and satisfaction of judgment by Miller, whichever occurs first.

6. Schmidt shall observe all Rules of Professional Conduct and Rules Governing Discipline during the term of this agreement. If additional complaints of misconduct filed against Schmidt after the date of this agreement result in formal disciplinary charges that are sustained, deferral of the second and third years of suspension shall be revoked and Schmidt shall be suspended for the remainder of the three-year term of his suspension.

7. Within one hundred and twenty (120) days of this order, Schmidt will pay in full the costs of this proceeding. Any costs incurred in this proceeding after the date of this order shall be paid by Schmidt within thirty (30) days after the conclusion of the term of his suspension and probation.

**IT IS FURTHER ORDERED** that, if Schmidt satisfies the conditions set forth above, the second and third years of his suspension shall be deferred and Schmidt shall be placed on supervised probation during that period, subject to the following additional conditions:

1. During the two-year probationary period, Schmidt's practice of law shall be supervised by a licensed New Mexico lawyer appointed by this Court. Schmidt shall meet with the supervising attorney as often as the supervisor deems necessary or advisable. The supervisor shall counsel

and direct Schmidt concerning the number and type of cases undertaken during his probationary period. The supervisor shall have authority to approve or disapprove Schmidt undertaking particular representations and fee arrangements based upon whether they conform to applicable provisions of the Rules of Professional Conduct. Schmidt shall discuss the handling and progress of his cases with his supervisor to the extent the supervisor deems necessary. The supervisor shall provide quarterly reports to disciplinary counsel concerning Schmidt's compliance with supervision. Thirty (30) days prior to the conclusion of the probationary period, the supervisor shall submit a final report to disciplinary counsel concerning whether Schmidt has satisfactorily completed his probation.

2. Schmidt shall comply with all directives of his supervising attorney during the probationary period.

3. Schmidt understands that at the conclusion of the three-year term of this discipline, he will be automatically reinstated to full licensure if he has fulfilled all the conditions and obligations set forth in this agreement including satisfactory completion of probation. If deferral of the two-year probationary period, or any portion thereof is revoked, or any condition or obligation set forth in this agreement is not fulfilled, disciplinary counsel may object to reinstatement, pursuant to SCRA 1986, 17–214(B).

**IT IS FURTHER ORDERED** that this opinion be published in *New Mexico Reports* and *Bar Bulletin.*

**IT IS SO ORDERED.**