1997–NMSC–008

931 P.2d 1386

**In the Matter of Carl J. SCHMIDT, an Attorney Disbarred from Practice Before the Courts of the State of New Mexico.**

No. 22128.

Supreme Court of New Mexico.

Jan. 27, 1997.

Sally E. Scott, Deputy Chief Disciplinary Counsel, Albuquerque.

Ira Robinson, Albuquerque, for Respondent.

## OPINION

PER CURIAM.

This Court issued a contempt order on November 14, 1996, pursuant to Rule 17–206(G) NMRA 1996, finding Carl S. Schmidt in criminal contempt of this Court for failing to appear at a show cause hearing on October 23, 1996 and for failing to abide by the disbarment order entered March 6, 1996. Nothing presented by Schmidt at a subsequent hearing mitigates these findings and respondent hereby is sentenced to five months incarceration. The entire period of incarceration is suspended if respondent complies with certain conditions set forth below.

In a prior disciplinary proceeding, respondent was found to have engaged in dishonest conduct in violation of Rule 16–804(C) of the Rules of Professional Conduct. Other rule violations were also found to be present. Pursuant to a conditional agreement not to contest and consent to discipline, this Court suspended respondent for a period of three years effective May 24, 1994. The Court deferred the second and third years of suspension in favor of probation so long as respondent complied with the terms of the consent agreement during the first year of suspension. *In re Schmidt,* 118 N.M. 213, 880 P.2d 310 (1994).

Respondent failed and refused to comply with the terms of the consent agreement and failed and refused to comply with the notice requirements of Rule 17–212 NMRA 1996 following entry of the order of suspension on May 24, 1994. On October 31, 1994, in a show cause proceeding initiated by the verified motion of chief disciplinary counsel, this Court revoked the deferral and suspended respondent for the entire three-year period. Respondent failed to appear at the show cause proceeding.

During the period of suspension, a second disciplinary proceeding was begun and respondent was found to have misappropriated $10,000 from his trust account. On March 6, 1996, respondent was disbarred from the practice of law and ordered that (1) no application for reinstatement could be filed until a minimum period of three years elapsed after May 24, 1997, the expiration date for respondent's previously-ordered suspension, (2) respondent took and passed the multistate professional responsibility examination, (3) paid all costs and full restitution, and (4) satisfied all conditions of the prior order of suspension. *In re Schmidt,* 121 N.M. 640, 916 P.2d 840 (1996).

Although given notice at all stages of the disciplinary proceeding, respondent failed to participate in the proceeding resulting in his disbarment and failed to satisfy the notice requirements of Rule 17–212 following disbarment.

In June 1996, disciplinary counsel was contacted by an employee of the United States Attorney's office for the District of Utah and advised that respondent was representing a debtor from whom the United States was attempting to collect money to satisfy a judgment entered in the United States District Court for the District of New Mexico. In April 1996, respondent furnished financial information concerning the debtor to the United States, and, in response to a request from the United States for additional financial information, respondent wrote a letter dated May 10, 1996. In that letter, respondent stated he would need more time to provide the requested information, and that, because the judgment debtor was in bankruptcy, "it would be far more productive for us to discuss a realistic settlement of the case." After disciplinary counsel confirmed that respondent had been disbarred in New Mexico, the Assistant United States Attorney handling the collection case provided a copy of a handwritten note from respondent dated July 8, 1996, in which he gave his "consent and permission" for direct contact with the judgment debtor. Disciplinary counsel also was informed that the judgment debtor had

called the United States Attorney's office after a garnishment had issued and was informed that respondent had been disbarred. Subsequently, the judgment debtor telephoned again and advised that he had contacted respondent who assured him that he was able to represent.him.

These events were set forth in a second verified show cause motion initiated by chief disciplinary counsel. Pursuant to that motion, a show cause order issued directing respondent to appear on October 23, 1996, to show cause why he should not be held in contempt of the Court's March 6, 1996 disbarment order. Because respondent failed to appear at the show cause hearing, the allegations of the verified show cause motion were deemed admitted as true.

 The show cause order was sent by certified mail to respondent's address of record, which was returned by the post office marked "Unclaimed." The "unclaimed" mail service was good service on respondent. In *In re Deutsch,* 113 N.M. 711, 832 P.2d 402 (1992), this Court noted that "due process requirements are satisfied in disciplinary proceedings by providing notice by mail to a respondent-attorney at his address of record." *Id.* at 714, n. 1, 832 P.2d 405, n. 1. We also stated that attorneys have an obligation to apprise the Court of an address at which mail will be regularly received. *Id.* Disbarred attorneys have the same obligation. Rule 17–212(D) NMRA 1996 requires that a disbarred, suspended or resigned attorney must, for five years, continue to provide an address where communications may be directed to him. The address used by the Court to mail the show cause order is the same address that appeared on respondent's May 10, 1996 letter to the Assistant United States Attorney in Utah and the same address at which she had written to him in July 1996.

 Moreover, at the sentencing hearing on the criminal contempt, respondent admit-

ted receiving documents from the Clerk of the Supreme Court and disciplinary counsel at that address. He usually did not open them, he said, because he "knew it was going to be bad news." In *In re Martinez,* 107 N.M. 171, 754 P.2d 842 (1988), the respondent-attorney claimed he had no notice of the pending disciplinary proceedings because he threw away the mail he received; he thought it related to an action filed against him by his wife. This Court found the service on Martinez at his address of record to be good service and also found it "implausible and . . . inconceivable . . . [t]hat an attorney would destroy without reading *any* legal document served upon him, regardless of the real or imagined nature of the proceedings. . . ." *Id.* at 173, 754 P.2d at 844. Destroying legal documents without reading them "cast[s] grave doubts upon [one's] ability to appreciate his obligations as attorney. . . ." *Id.* The same is no less true of disbarred attorneys. An attorney who finds himself or herself in the position to receive the admittedly bad news of disbarment does so because of his or her own misconduct. The longer a disbarred attorney remains in a state of denial or avoidance about ongoing responsibilities, the more likely it is that he or she will be held in contempt and the further he or she is from the possibility of sustaining the burden of proof necessary to be reinstated. *See* Rule 17–214(E) NMRA 1996.

As a result of the October 23, 1996 show cause hearing at which respondent failed to appear, an order was issued on November 14, 1996, finding him in criminal contempt of this Court.[1] He was cited for failing to respond or appear at the October 23, 1996 hearing and for failing to abide by the March 6, 1996 disbarment order, both by failing to file the affidavit of compliance with notice requirements set forth in Rule 17–212, and by continuing to practice law. The November 14, 1996 order also directed the issuance of a bench warrant for respondent's arrest to secure his appearance to present any facts that

---

**1.** See discussion of criminal contempt in *In re Herkenhoff,* 122 N.M. 766, 931 P.2d 1382 (1997), also decided today.

might justify his failure to comply with the disbarment order.

Correspondence from the Clerk of the Supreme Court that accompanied the November 14, 1996 order notified respondent that if he would promise the Court in writing by a certain date that he would attend the hearing the bench warrant would not be delivered for execution. After respondent failed to respond, the bench warrant was delivered for execution. Thereafter, based upon assurances from his counsel that he would appear, respondent was permitted to appear without being arrested.

At the hearing for sentencing on contempt, respondent contended that he did not represent the judgment debtor as an attorney but rather was only helping as a friend. He also stated that the United States Attorney contacted him, not the other way around. He contended that he wrote the note giving permission to contact the judgment debtor only because the United States attorney insisted on having something in writing. He insisted he had told them that he was not representing the judgment debtor. These explanations provide no justification for respondent's actions.

█ Only two types of legal representation are recognized—litigants appearing pro se or those appearing through licensed counsel of record. They may not appear through unlicensed laymen, not even their parents, let alone "friends." *Brown v. Ortho Diagnostic Sys., Inc.*, 868 F.Supp. 168 (E.D.Va.1994). One reason for this rule is that when a licensed attorney represents a party, "there are grounds to believe that the representative's character, knowledge and training are equal to the responsibility." *Id.* at 172. A lawyer who has been disbarred has been found seriously wanting in one or more of the areas of character, knowledge, or training, and, therefore, can no more provide representation to another person than can an unlicensed layperson.

█ Even if the United States Attorney initiated contact with respondent rather than the other way around, he should have done nothing more than to advise that he did not represent the judgment debtor and could not be involved in any way. Instead, respondent furnished financial information on behalf of the judgment debtor and wrote a letter stating he needed more time to provide additional financial information and suggested that it would be more productive to discuss settlement. Finally, even when he wrote a note on July 8, 1996, to tell the United States Attorney that the judgment debtor could be contacted directly, he gave his "consent and permission" to do so. These are the acts of an attorney. Respondent violated the March 6, 1996 disbarment order each time he took any action on behalf of this judgment debtor. This Court will not tolerate an attorney's blatant disregard for this Court, its orders, and its disciplinary proceedings.

NOW, THEREFORE, IT IS ORDERED that Carl J. Schmidt hereby is sentenced to five (5) months of incarceration; and

IT IS FURTHER ORDERED that the entire period of incarceration is suspended under the following terms and conditions:

1) Respondent shall abide by all terms and conditions of the amended disbarment order issued March 6, 1996;

2) Respondent shall adhere to and comply with Rule 17–212 NMRA 1996 on or before December 16, 1996; and

3) Respondent shall cease from any further representation of any person.

IT IS FURTHER ORDERED that should any of the terms and conditions not be followed, this Court shall lift the suspension of the period of incarceration and issue a bench warrant for respondent's immediate arrest and confinement.

IT IS SO ORDERED.

MINZNER, J., not participating.