2001-NMSC-007

20 P.3d 121

**In the Matter of Drew Alan NEAL, Esq., An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

No. 26,782.

Supreme Court of New Mexico.

March 15, 2001.

Sally Scott-Mullins, Deputy Chief Disciplinary Counsel Albuquerque, NM, for Disciplinary Board.

Briggs F. Cheney, Albuquerque, NM, for Respondent.

## OPINION

PER CURIAM.

{1} This matter came before the Court upon recommendation of the disciplinary board to approve a conditional agreement not to contest and ·consent to discipline. We hereby approve the consent to discipline and, pursuant to Rule 17–206(A)(2) NMRA of the Rules Governing Discipline, order that Drew Alan Neal be suspended from the practice of law for two years, which suspension shall be deferred and respondent shall be placed on supervised probation with specific conditions that must be satisfied.

{2} Respondent was trial counsel for a defendant convicted of first degree murder, conspiracy to commit murder, and other related crimes. The judgment, partially suspended sentence, and commitment to the Department of Corrections was filed in the office of the clerk of the Second Judicial District Court on July 20, 1999. Pursuant to the New Mexico Constitution, Article VI, § 2, the appeal was as of right and directly to this Court. *See also* Rule 12–102(A) NMRA 1999.

{3} Rule 12–201(A)(2) NMRA 1999 requires that the notice of appeal be filed within thirty days after the judgment was filed in the district court clerk's office. Respondent failed to file the notice of appeal within the thirty-day period. On August 20, 1999, thirty-one days after the judgment was filed, without having filed a notice of appeal in district court, respondent attempted to file via facsimile a motion for extension of time to file the statement of issues in this Court.

{4} Respondent was contacted by the chief deputy clerk for the New Mexico Supreme Court. Respondent told the clerk he had not filed a notice of appeal because he

did not think it was required since the appeal was an automatic appeal. Rule 12–202(A) states that an appeal permitted by law as of right is taken by filing a notice of appeal with the district court clerk within the time allowed by Rule 12–201. The clerk informed respondent that it was necessary for him to fulfill the notice of appeal requirements.

{5} Almost one month later, on September 16, 1999, respondent filed a motion for untimely filing of notice of appeal with the district court clerk. Although the motion was granted the same day, respondent did not file the notice of appeal with the district court clerk until October 4, 1999.

{6} Rule 12–202(D) requires the appellant in a criminal case to serve copies of the notice of appeal on the appellate court, the appellate division of the attorney general, the appellate division of the public defender, the trial judge, trial counsel of record for all other parties, and the tape monitor or court reporter who took the record. The notice of appeal filed by respondent shows only that a copy was sent to the office of the District Attorney for the Second Judicial District. Respondent failed to serve copies of the notice of appeal on any other recipient mandated by the rule.

{7} Rule 12–208(B) requires that, within thirty days of filing the notice of appeal, the appellant shall file a docketing statement if the appeal is before the court of appeals, or a statement of issues if the appeal is before the Supreme Court. Rule 12–208(A) provides that the statement of issues is the duty of trial counsel. After filing the notice of appeal on October 4, 1999, respondent attempted on October 19, 1999, to file a pleading denominated "Docketing Statement" with the clerk of the Supreme Court. The chief deputy clerk once again contacted respondent and informed him that he must file a "Statement of Issues" not a "Docketing Statement." The clerk specifically advised respondent to read the Rules of Appellate Procedure.

{8} On November 19, 1999, at the request of the chief deputy clerk, the chief clerk of this Court wrote to respondent to remind him of his responsibility to file a statement of issues. Her letter also requested that respondent contact the chief deputy clerk to advise her of his intentions. Respondent made no response to the letter from the chief clerk.

{9} On December 15, 1999, respondent attempted to file a statement of issues without a motion for extension of time, which motion was required because the pleading was more than thirty days overdue. The chief deputy clerk called respondent and informed him that a motion for extension was required because the statement of issues was untimely. Respondent faxed a motion for extension of time to file that same day. Both the motion for extension of time and the statement of issues were filed on December 15, 1999.

{10} Rule 12–208(B) requires that the statement of issues be served on the district court clerk and the same persons required to be served with the notice of appeal. Respondent failed to serve the statement of issues on the district court clerk or the other persons who should have received it.

{11} Rule 12–209(B) provides that, upon receipt of a copy of the docketing statement, or in the case of an appeal to the Supreme Court, the statement of issues, "the district court clerk shall number the pages of the record proper (the trial court file) and send it to the appellate court." Because respondent failed to properly serve the statement of issues, the district court clerk was not alerted to prepare the record proper and forward it to the appellate court. In February and March of 2000, the chief deputy clerk once again made calls to respondent concerning the absence of the record proper. On at least one occasion, the chief deputy clerk spoke to respondent and specifically reminded him of his obligation to serve the statement of issues on the district court clerk. In March 2000, the chief clerk of this Court also called respondent's office and left messages with his staff. Respondent did not return the calls.

{12} On April 27, 2000, this Court dismissed the case for failure to perfect the appeal. A copy of the dismissal order was sent to respondent and to the State's attorney. Approximately one week later, respondent telephoned the chief deputy clerk and

stated that the appellate public defender was now handling the appeal. Although the clerk specifically advised respondent that he should seek to have the appeal reinstated, he did not file a motion to reinstate the appeal.

{13} On September 16, 1999, respondent had filed a motion in district court requesting that the appellate public defender be appointed to handle the appeal, which motion was granted by the district court on the same day. Respondent sent nothing to the appellate public defender to notify that agency of its appointment. Additionally, because respondent had failed to send copies of the notice of appeal and statement of issues to the entities listed in the applicable appellate rules, the appellate public defender had no notice of the problems with the appeal.

{14} A copy of the April 27, 2000, order dismissing the appeal was sent by the Supreme Court Clerk's office to the appellate public defender. After receiving that order, the appellate public defender began making inquiries concerning the appeal. On May 17, 2000, the appellate public defender delivered to the district court clerk a copy of the statement of issues filed by respondent in order for the record proper to be prepared and sent to this Court. On June 7, 2000, the appellate public defender filed a motion to reinstate the appeal and to substitute counsel, which motion was granted. The appellate public defender was substituted for respondent as counsel for the appellant.

{15} Rule 12–211 governs the arrangements for providing the transcript of proceedings to the appellate court. In appeals in which a life sentence has been imposed, Rule 12–211(C) provides that a designation of the proceedings to be included in the transcript shall be filed by the appellant in the district court within fifteen days after the judgment is filed. Respondent did not comply with this appellate requirement.

{16} On May 22, 2000, respondent sent a fax to the district court reporter's office that stated, "Please designate record & send to Supreme Ct." The court reporter advised respondent that this blanket designation did not suffice and that a designation would have to be filed in the district court. Respondent filed the required designation on June 8, 2000.

{17} Prior to this case, respondent had never handled a criminal appeal, except to the district court from rulings of the metropolitan court of limited jurisdiction. In response to supplemental inquiries from disciplinary counsel concerning this matter, he stated as follows:

My understanding was that "automatic appeal" meant just that, an automatic appeal. In retrospect, it would have been better to consult the rule prior to making any assumptions.

{18} By reason of his failure to properly pursue his client's appeal, respondent violated Rule 16–101, by failing to provide competent representation to his client; Rule 16–103, by failing to act diligently and promptly on his client's behalf; Rule 16–302, by failing to make reasonable efforts to expedite the appeal; Rule 16–804(D), by engaging in conduct prejudicial to the administration of justice; and Rule 16–804(H), by engaging in conduct which reflects adversely on his fitness to practice law. In the consent agreement, respondent agreed not to contest these charges.

{19} The disciplinary charges also alleged that significant aggravating factors were present in respondent's case. Respondent engaged in a pattern of misconduct by failing to comply with numerous requirements of the Rules of Appellate Procedure. Respondent committed multiple violations of the Rules of Professional Conduct. Respondent's client was especially vulnerable to respondent's misconduct because the matter at issue concerned a criminal sentence equal to life imprisonment, the client was incarcerated during the time of respondent's misconduct, and the client was without resources sufficient to hire another attorney. All of these factors are recognized by the *ABA Standards for Imposing Lawyer Sanctions* Section 9.2, and all are present in this case and properly considered in formulating the appropriate disciplinary sanctions.

{20} In addition, the disciplinary charges alleged that respondent had refused to acknowledge the wrongful nature of his conduct, which is another recognized aggra-

vating factor. At a hearing, respondent maintained that he did acknowledge the wrongful nature of his conduct. Nonetheless, his testimony included lengthy recitations of the difficulties he encountered in defending his client, from the very small fee he collected, the withdrawal of co-counsel on the eve of trial, through the completion of the sentencing process. Respondent also testified that he assumed that an automatic appeal would not require the same amount of attention as another appeal, and that he assumed the transcript and record would be automatically prepared. Although respondent may not have thought his recitations evinced a failure to accept responsibility, the hearing committee did. Even respondent's own counsel expressed concern that respondent was still engaging in a certain amount of denial. We share the concerns expressed about respondent's level of cognition and acceptance of his responsibilities and the extent to which he was derelict in discharging them.

■ {21} Rule 16–101 of the Rules of Professional Responsibility defines competent representation as requiring "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Respondent's eight years of experience practicing law should have been sufficient for him to know not to operate on his assumptions about the meaning of an automatic appeal, and if it was not, then the wording of Rule 16–101 should have provided him with the necessary guidance. Research, analysis and timeliness are fundamental in the legal profession. No lawyer should approach any task without knowledge of the applicable statutes, court rules, and case law, especially in matters with which one is not intimately familiar. Regardless of how well respondent may have served his client at the trial level, he was completely incompetent in discharging his appellate duties. That the client eventually received the appeal to which he was entitled is in no measure a result of respondent's representation; only the diligence of the Clerk of this Court and her staff, as well as that of the appellate public defender, preserved this appeal. If respondent fails to fully accept how profoundly he failed his client in this appeal, he is unlikely to benefit from the opportunity to learn provided by the discipline being imposed.

■ {22} In response to the formal disciplinary charges filed against him, respondent alleged in mitigation that he had been diagnosed with depression eight years previously. He stated he had not remained faithful to the treatment because he did not understand that he needed to remain on medication. Respondent also alleged that shortly before the formal disciplinary charges were filed, he had resumed treatment for depression. Respondent's depression cannot be considered a mitigating factor because he failed to demonstrate a prolonged period of rehabilitation, which is the standard for considering a mental health condition as a mitigating factor as set forth in the *ABA Standards for Imposing Lawyer Sanctions* Section 9.3. *See In re Smith*, 115 N.M. 769, 858 P.2d 857 (1993). Adherence to this criterion is necessary, despite this Court's "compassion for troubled lawyers...." *Id.* at 771, 858 P.2d at 859. "[P]rotection of the public must be predominant in our determination of these matters." *In re Sparks*, 108 N.M. 249, 251, 771 P.2d 182, 184 (1989).

{23} After raising the issue of his previously-diagnosed depression, respondent agreed to undergo a psychological evaluation. The resultant report diagnosed an alcohol abuse issue as well as mental health issues. The recommendation that respondent complete an intensive outpatient program for alcohol abuse, followed by psychotherapy, is incorporated into our order of discipline.

{24} During the period of deferred suspension, while respondent is on supervised probation, he shall satisfy the following terms and conditions:

(1) Respondent shall observe all Rules of Professional Conduct and Rules Governing Discipline;

(2) Respondent shall promptly and timely respond to any and all complaints filed with the disciplinary board and shall promptly and timely respond to any and all requests from disciplinary counsel for ad-

ditional information relating to such complaints;

(3) Respondent shall meet with the supervising attorney on such regular basis as directed by the supervising attorney, but no less than once per month;

(4) Respondent shall abide by the supervising attorney's directives concerning the competent representation of his clients and confer with the supervising attorney about the volume of his workload and abide by the supervising attorney's determination of whether respondent can undertake additional work, which determination shall be based upon a showing by respondent that he has the time to complete representation in a competent and timely manner and has demonstrated an understanding of his obligations in these matters to the satisfaction of the supervising attorney; and

(5) Respondent shall pay the supervising attorney for his or her services at an hourly rate to be determined by an agreement between respondent and his supervising attorney.

{25} Throughout the period of probation, respondent shall abstain completely from the use of alcohol and mind- or mood-altering drugs unless specifically prescribed for him by a licensed physician. In the event such drugs are prescribed for respondent, he shall inform disciplinary counsel within seventy-two hours of the name of the drug or drugs prescribed, the name, address, and telephone number of the prescribing physician, and the medical condition for which the drug or drugs have been prescribed. If requested by disciplinary counsel, respondent shall provide a release of information to disciplinary counsel for release of information pertaining to the condition and the drug or drugs prescribed.

{26} Pursuant to the recommendation of the physician who conducted a psychological evaluation of respondent during the course of this proceeding, respondent shall participate in an alcohol treatment program selected or approved by disciplinary counsel. While this may be an outpatient program, respondent must participate in the treatment program until discharged by the program. Respondent shall follow any ongoing treatment recommendations prescribed by the treatment program, including counseling. Respondent shall execute a release in a form approved by disciplinary counsel, which permits disciplinary counsel to obtain information concerning his progress in treatment, his discharge from treatment, and any recommendations of the treatment program for ongoing treatment.

{27} Respondent shall pay all costs associated with his participation in the treatment program. Respondent shall take all actions necessary in order for his participation in the treatment program to commence on or before April 13, 2001, unless disciplinary counsel agrees in writing to an extension for a specific period of time.

{28} Upon conclusion of the alcohol treatment program, respondent shall begin psychotherapy and continue psychotherapy throughout the remainder of the probationary period unless discharged in writing by the treating psychotherapist. If requested by disciplinary counsel, respondent shall provide a release of information to disciplinary counsel for information pertaining to the therapy and respondent's progress.

{29} Throughout the probationary period, respondent shall submit to and pay for random drug screens for the presence of alcohol or non-prescribed mind- or mood-altering drugs. Respondent understands and acknowledges that he shall present himself for a drug screen at the site designated by disciplinary counsel within eight hours of a request for testing. Respondent further understands and acknowledges that he must provide disciplinary counsel with a telephone number at which he can always be reached or at which he will receive messages in sufficient time to submit to a random drug screen within eight hours of a request; however, it is understood that respondent's wife's family resides in Mexico and respondent and his wife travel to Mexico several times each year to visit. It is also understood that respondent is a military reservist and is required to serve one weekend each month, as well as a longer period of active service each year, which period is usually two weeks but may be longer. If respondent is out of the United States visiting family or on active reserve duty, he shall advise disciplinary counsel no

less than one week in advance of his date of departure and provide disciplinary counsel with his scheduled dates of departure and return.

{30} Respondent shall pay the costs of his disciplinary proceeding in the amount of $279.90 on or before May 1, 2001, with interest to accrue at the rate of eight and one-half percent (8½%) per annum on any unpaid balance as of May 1, 2001. Said costs shall be reduced to a transcript of judgment and payment of costs shall be deemed a condition of probation.

{31} At the conclusion of the probationary period, respondent shall comply with the requirements of Rule 17–214(H) concerning reinstatement from probation.

{32} Should respondent fail to satisfy any condition or requirement of probation, disciplinary counsel shall seek revocation of the deferral of suspension, and, should the deferral be revoked, respondent shall be suspended for the entire two-year period.

{33} **IT IS SO ORDERED.**