2003-NMSC-032

81 P.3d 47

**In the Matter of Drew Alan NEAL, Esq.**

**An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

**No. 26,782.**

Supreme Court of New Mexico.

Nov. 26, 2003.

See also 130 N.M. 139, 20 P.3d 121.

Sally E. Scott–Mullins, Albuquerque, NM, for Disciplinary Board.

Thomas A. Tabet, Rafael Padilla, Albuquerque, NM, for Respondent.

## OPINION

PER CURIAM.

{1} This matter came before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, Rules 17–101 through 17–316 NMRA. In those proceedings, respondent Drew Alan Neal was found to have committed multiple violations of the Rules of Professional Conduct, Rules 16–101 through 16–805 NMRA. Intertwined with the current disciplinary matter was respondent's failure to comply with conditions for deferral of a two-year period of suspension imposed in a previous disciplinary case. We adopt the recommendation of the disciplinary board that Drew Alan Neal be disbarred from the practice of law in New Mexico.

{2} The Preamble to the Rules of Professional Conduct discusses the various roles that lawyers play in our legal system. While the lawyer is obligated to be a zealous advocate for clients, advocacy must be conducted within the rules of the adversarial system. Lawyers are also officers of the legal system and are obligated to "demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials." Respondent's disbarment resulted from his lack of respect for the legal system, the rules governing our adversary system, and the judges and other officials who serve it.

{3} In February 2001, this Court considered a disciplinary matter involving respondent's failure to provide competent representation in the appeal of his client's conviction for first degree murder. In light of the matters before the Court today, it is noteworthy that in the prior disciplinary case, respondent was found to have repeatedly failed to comply with the appellate rules, missed deadlines, and failed to respond to directives from the clerk of this Court. In that case, the Court imposed the discipline set forth in a consent to discipline executed by respondent—a two-year suspension, deferred in favor of probation with certain conditions. *In Re Neal,* 2001–NMSC–007, 130 N.M. 139, 20 P.3d 121. The conditions imposed included participation in an alcohol abuse treatment program, random drug testing, and working with a supervising attorney.

{4} In February 2002, disciplinary counsel filed a specification of charges against respondent in the instant case to address his conduct in several incidents in Metropolitan

Court in Bernalillo County. In May 2002, before the new charges were heard, disciplinary counsel filed a show cause motion in this Court to address respondent's failure to comply with the conditions for deferral of his suspension. Respondent failed to timely appear for drug tests and had submitted diluted specimens on two occasions, one of which was coupled with a positive test for an illegal drug. He also had failed to participate in an alcohol treatment outpatient program. The response to the show cause motion asserted that respondent had been diagnosed with attention deficit disorder and was under treatment for that condition. We revoked deferral of the suspension for ninety days and directed disciplinary counsel to report back to this Court at the end of that period.

{5} Disciplinary counsel's motion to continue revocation of probation was filed in August 2002 to comply with this Court's directive for a report on respondent's progress. This motion noted that after he was suspended in May 2002, respondent failed to report for two drug tests, provided another diluted specimen, and committed other misconduct addressed in the case we decide today. Respondent's law license remained suspended until this order of disbarment was issued.

{6} By the time the instant disciplinary matter came on for hearing, two amended specifications of charges had been filed to address additional instances of misconduct that had been brought to the attention of disciplinary counsel. Two counts of the second amended specification of charges involved respondent's failure to respond to requests for information from disciplinary counsel concerning various disciplinary complaints. Respondent's failure to cooperate violated his duties under Rules 16–803(D), which mandates a lawyer to give full cooperation and assistance regarding disciplinary procedures, and 16–804(H) because it reflected adversely on his fitness to practice law. A lawyer who fails to cooperate during a disciplinary proceeding demonstrates a refusal to submit to regulation that is inconsistent with the privilege to practice law described in Rule 17–205.

{7} Another count involved respondent's appearance, while suspended, at a pre-trial hearing in Magistrate Court in Roosevelt County for a defendant accused of DUI. Respondent previously had faxed the Magistrate Court, on his attorney letterhead, a waiver of arraignment and entry of plea signed by the client. Respondent then called the court and asked to attend the pretrial conference by phone; that request was denied by the Magistrate Judge. Respondent appeared at the hearing, spoke to the Assistant District Attorney about the way her office handled discovery, and received the State's plea offer. When the case was called, respondent did not sit at counsel table. Instead, he stood before the bench, told the court he did not feel well, and stated that he was not entering his appearance and did not know if he would be. He did not tell the prosecutor or the judge that he was suspended and could not represent the defendant. By addressing the court when his client's case was called, respondent acted as a lawyer. Only licensed lawyers can represent other litigants in court. *In re Schmidt,* 1997–NMSC–008, 122 N.M. 770, 931 P.2d 1386. By telling the court that he was not entering an appearance, he falsely represented that he was a licensed attorney who could enter an appearance. After the hearing, respondent specifically told several people at the Portales Police Department that he was representing the defendant.

{8} That evening, when respondent arrived back in Albuquerque, he returned a call directing him to appear for a drug test. He told the Lawyer's Assistance Committee representative charged with calling for random tests that he had been in Farmington all day. That somewhat gratuitous lie suggests that respondent knew he was acting improperly and that he was willing to try to conceal his misconduct by means of additional lies.

{9} Respondent's actions in the Portales arraignment violated Rule 16–303(A), making a false statement of material fact to a tribunal; Rule 16–401(A), making false statements of material fact; Rule 16–505(A), engaging in the unauthorized practice of law while suspended; Rule 16–804(C), engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; Rule 16–804(D), engaging in conduct prejudicial to the administration of

justice; and Rule 16–804(H), engaging in conduct reflecting adversely on his fitness to practice law.

{10} The remaining three counts of the charges addressed respondent's conduct in various Metropolitan Court proceedings in Albuquerque. The first of these counts addressed respondent's failure to arrange for either a continuance or coverage by another lawyer when he had two cases set for trial at the same time. Respondent represented a client on DUI charges set for a non-jury trial on March 20, 2001. At the same time, respondent was scheduled to defend a DUI charge against another client in a jury trial before a different Metropolitan Court judge. Both of respondent's clients were present for trial.

{11} Respondent first went to the non-jury trial courtroom and announced he was not ready for trial because he had another trial in which a jury had been impaneled that same morning. He did not request a defense continuance but seemed to expect that the court would not require him to proceed. The judge stated that the bench trial would start at 10:30 a.m. Respondent then went to the other courtroom and announced he was ready to proceed to trial. He told the judge that another Metropolitan Court judge was trying to hear a bench trial before his jury trial and that "he was not inclined to do that." The judge acknowledged that it is common to have more than one case set for trial on the same day in Metropolitan Court and that lawyers should know which cases are likely to go to trial and should arrange in advance for continuances or coverage by another lawyer. The judge also noted that the week before, not one but two judges had come to her courtroom to get respondent to try cases scheduled in their courts that had not been continued.

{12} After this dialogue the judge directed respondent to return to the other courtroom for the bench trial. Respondent did so, but then announced that he was not prepared for trial and that he was there under duress from the court. When the trial began, the first witness was the police officer in charge of the roadblock at which respondent's client had been arrested. When the witness was tendered for cross-examination, respondent told the court that he had not taken any notes and had no questions to ask because he was preparing for voir dire in his jury trial.

{13} In another count of the charges, respondent was charged with disruption of a tribunal and conduct that had no substantial purpose other than to harass or burden a third person. These charges arose from respondent's reaction to a jail transport officer, who objected when respondent tried to take his client into the jury room to confer. Respondent was told, consistent with jail policy, that the transport officer had to have his charges in sight at all times in court. Respondent became agitated and threatening toward the officer. He continued to upbraid the officer outside the courtroom, so much so that it was later necessary for another judge to send someone to quiet the commotion.

{14} The final count involves respondent's conduct in yet another DUI matter in Bernalillo County Metropolitan Court. The case was set to be heard on March 20, 2002, and, when the case was called, respondent advised the court that one of the arresting officers had made a "belt tape" of the arrest that he had requested a copy from the Albuquerque Police Department Evidence Department and that he had been told the tape was lost. Later that day, the assigned prosecutor learned that the Evidence Department did have the tape and that respondent had asked for a copy of the tape months earlier, but had never returned to pick it up. The prosecutor specifically advised respondent that the tape was available in the Evidence Department.

{15} When the case reconvened on April 23, 2002, respondent told the court that he did not have the tape because when he tried to go to the Evidence Department that same morning, he realized the Evidence Department had moved and he didn't have enough time to go to the new location. In his response to the disciplinary complaint concerning this matter, however, respondent stated he learned the Evidence Department had moved when he went to the old location to get the tape sometime prior to the date of trial. Respondent said that he meant to have his investigator obtain the tape, but forgot to do so.

{16} Also, on the reconvened trial date, respondent told the judge that the prosecutor had told him he had discussed the disciplinary complaint with the judge. Thereafter, the judge replied on the record that she had not had any such discussion with the assistant district attorney. In his response to the disciplinary complaint, respondent said he asked the judge if she knew about the complaint because he wanted to know if the prosecutor had asked her to file a complaint.

{17} The common thread in these matters is respondent's disdain for the legal system, the disciplinary system, and this Court, not to mention his clients and the concept of truthfulness. Respondent advised disciplinary counsel that seeking a continuance would have been detrimental to his clients because it would have foreclosed the possibility that the State would not appear ready for trial, which could result in dismissal of the charges. He apparently saw no harm in causing disarray in the Metropolitan Court's scheduling on the off-chance that if the State's witnesses did not appear, the case against his client might be dismissed. He apparently believes a lawyer has the right to decide which cases take precedence for trial and that he has no obligation to inform a court (or his client) in advance that he will not try a case on a particular day. Respondent's disrespect for the court system is demonstrated as well by his cavalier approach in preparing a case for trial and obtaining evidence needed to protect his client's interests. He has demonstrated that he sees nothing wrong in making false statements to a court in order to obtain information he wants. In his appearance before the magistrate judge in Portales, he demonstrated his belief that sophistry is a viable strategy for avoiding limitations placed on his license to practice law by this Court.

{18} Respondent is wrong on all counts. He engaged in the unauthorized practice of law by attending the arraignment in Magistrate Court. Respondent is mistaken about the lawyer's role in the legal system. The duty to represent his clients' interests fails to justify one's failure to obtain a continuance or to arrange for coverage of conflicting court settings, with the hoped-for result of obtaining a procedural dismissal. Moreover, lawyers do not decide whether a scheduled case will be tried or not.

{19} *In re Spruell*, 227 Ga.App. 324, 489 S.E.2d 48 (1997) involved an attorney who agreed on a Thursday evening to represent a client at a DUI trial four days later. At the time he was hired, Spruell knew he was leaving the next morning for vacation in a remote area where he would be unreachable. Although he did file a request for continuance, Spruell left town without knowing whether it had been granted and without making arrangements for someone else to cover the trial if it was not continued. The trial court's finding of contempt was reversed on appeal because the trial court had considered improper evidence in the contempt hearing. The appellate court noted, however, that a rational fact-finder could infer that "Spruell was wilfully disrespectful when he disregarded the scheduling order and forced the court to revise its schedule to fit his convenience." *Id.* at p. 49.

{20} Respondent likewise expected the Bernalillo County Metropolitan Court to "revise its schedule to fit his convenience." It should be obvious that, if all lawyers behaved like Spruell and respondent, the principles of judicial economies and administration of justice could be compromised. It is incumbent on attorneys to resolve scheduling conflicts in advance in order to minimize disruption of the legal system. This is not to suggest that last-minute conflicts will not sometimes arise, or that last-minute reasons for needing a continuance will not occur. The need for such accommodation should be the exception, however, not a strategy employed by counsel. Failing to appear for trial because of a scheduling conflict not addressed in advance is sanctionable. Not only does such conduct interfere with the court's schedule, but also it is an unreasonable imposition on all participants in the legal process.

{21} In *Beit v. Probate and Family Court Dept.*, 385 Mass. 854, 434 N.E.2d 642 (1982), the court expressed its view that it was proper for costs to be assessed against an attorney who failed to appear for trial. The court stated:

"The duty of an attorney punctually to present himself in court and diligently to continue with a trial he has undertaken and not to delay it for any personal matter reasonably within his control is clear." (Citation omitted.) "Counsel for litigants, no matter how 'important' their cases are, cannot themselves decide when they wish to appear or when they will file those papers required in a law suit. Chaos would result.... There must be ... some respect shown to the convenience and rights of other counsel, litigants, and the court itself." (Citation omitted.) *Id.* at p. 645.

Respondent's conduct inconvenienced other counsel, litigants (including his own clients), and the court itself. Although the cases cited involved the assessment of costs and a finding of contempt by the trial judge, it is equally proper to impose disciplinary sanctions for the obstructive conduct in which this respondent engaged in the Bernalillo County Metropolitan Court.

{22} Respondent violated Rule 16–101 by failing to provide competent representation to the client in whose trial he refused to participate, Rule 16–103 by failing to provide prompt and diligent representation to his clients, Rule 16–107(B) by engaging in a conflict of interest when respondent's representation of his client was limited by his interest in resisting the Metropolitan Court's efforts to hear the cases set for trial, Rule 16–302 by failing to make reasonable efforts to expedite litigation consistent with the interests of the client, Rule 16–303(A) by making false statements of material fact to a court, Rule 16–305(C) by engaging in conduct intended to disrupt, and which, in fact, disrupted a tribunal, Rule 16–404 by using means in the representation of a client that had no substantial purpose other than to embarrass, delay or burden a third person, Rule 16–801(A) by knowingly making a false statement of material fact in connection with a disciplinary proceeding, Rule 16–804(C) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, Rule 16–804(D) by engaging in conduct prejudicial to the administration of justice, and Rule 16–804(H) by engaging in conduct reflecting adversely on his fitness to practice law.

{23} Respondent was represented by counsel in this disciplinary case. When the merits hearing convened on November 12, 2002, neither respondent nor his attorney were present. The hearing committee located respondent's counsel, who stated he was unsure whether he told respondent that a second amended specification of charges had been filed. Pursuant to Rule 17–310(C) the charges had been deemed admitted after no answer was filed and no response to the motion to deem charges admitted was filed. The hearing committee succeeded in contacting respondent by phone during the hearing. Respondent said he was unsure whether he had seen the second amended charges. He advised the committee that he was about to be deployed on active duty in the military.

{24} The chair of the hearing committee advised respondent and his counsel on the record that the hearing would be reconvened on December 11, 2002, and, that they could file whatever they thought was appropriate prior to the hearing. The chair further directed that if respondent received orders placing him on active military duty, he should fax a copy of his orders to the chair within twenty-four (24) hours. Although respondent agreed to do so, nothing was filed on behalf of respondent, including notice that respondent had been deployed on active military duty. When the hearing reconvened nothing had been filed on respondent's behalf and neither respondent nor his attorney attended. The hearing was concluded without respondent and the hearing committee subsequently issued its decision recommending that respondent be disbarred.

{25} In accordance with § 520 of the Soldiers and Sailors' Civil Relief Act, 50 U.S.C. app §§ 501–593 (1941) and this Court's March 25, 2003, order for compliance with that act, disciplinary counsel tendered to this Court an affidavit concerning military service. The affidavit showed that respondent could no longer be contacted at his address of record and that a research inquiry to the Department of Defense Human Resource Activity, Defense Manpower Data Center, had resulted in a report that respondent was not in the military. The affidavit

also disclosed, however, that shortly before this matter was set for oral argument before this Court, disciplinary counsel learned that respondent was on active duty with a National Guard unit in Clovis, New Mexico.

{26} Attached to disciplinary counsel's affidavit was a copy of a memorandum faxed by disciplinary counsel to respondent at the National Guard unit in Clovis. The memorandum informed respondent of the status of the disciplinary proceeding, including the scheduled hearing before this Court, and the fact that respondent's attorney of record had been suspended from the practice of law. Approximately one hour before the hearing was set to begin, respondent faxed a Motion for Stay of Proceedings to the clerk of this Court. This motion was based upon the Soldiers' and Sailors' Civil Relief Act and respondent's active deployment. The affidavit and its attachments revealed, however, that respondent did not receive orders for active duty until January 27, 2003, and was not deployed until January 30, 2003. Contrary to respondent's understanding, as stated in his motion, the Soldiers' and Sailors' Civil Relief Act does not stay all legal action during his active duty. A stay may be appropriate only if a person's active military duty places them at a disadvantage in a legal proceeding.

{27} The previous occasion on which this Court considered the Soldiers' and Sailors' Civil Relief Act, *Jaramillo v. Sandoval*, 78 N.M. 332, 431 P.2d 65 (1967), illustrates that military service will not stay every action. *Jaramillo* was a paternity and child support case. A jury trial was held on the issue of paternity with defendant present and testifying that he was not the child's father. The jury found that he was the father. A hearing was then scheduled to determine the remaining issues including child support. Prior to the second hearing, defendant's attorney filed an affidavit stating the defendant was on active military service. The hearing was held with the attorney for defendant present, but without the defendant, and the amount of support to be paid by defendant was set by the court. On appeal, defendant argued the trial court had erred in determining the monetary issues in his absence, and that the

Soldiers' and Sailors' Civil Relief Act operated as a bar to the proceedings in his absence. This Court disagreed, stating that the Soldiers' and Sailors' Civil Relief Act permits a stay of proceedings unless the court determines that the military service will not affect the ability of the litigant to present his case. The Court held that it had not been shown that defendant's presence would have aided him in the determination of the reasonableness of the charges for confinement and the amount of child support to be paid. This Court also noted that defendant failed to show that he attempted to obtain leave to attend the hearing.

{28} The requirements of the Soldiers' and Sailors' Civil Relief Act are no different in an attorney discipline case. *In re Bashor*, 16 Wash.2d 168, 132 P.2d 1027 (1943), is an attorney discipline case in which lawyer Bashor did not join the military until after his case had been heard by the trial committee and the board of governors. The stay request was filed in the Supreme Court, but the lawyer, who was represented by counsel, also filed his brief on the merits. The Court determined that Bashor's defense was not materially affected by his military service. Bashor was disbarred.

{29} In this case, respondent defaulted on answering the second amended specification of charges, and the charges were deemed admitted before the November 12, 2002, hearing. During that hearing, respondent was specifically informed of the continued hearing date of December 11, 2002, and that he could file pleadings prior to that date. Respondent neither filed a motion to set aside the order deeming allegations admitted nor attended the hearing on December 11, 2002. Because he was not on active duty at the time of that hearing, his military service did not affect his defense of these charges in any way. The merits of the matter were decided with notice to respondent and without any effort on his part to defend himself. Nor is it likely respondent's presence would change the result in this matter. Respondent made false statements to courts, engaged in the unauthorized practice of law with disciplinary charges pending, and tested positive for illegal drugs while on probation.

He had been suspended from the practice of law since May 2002, without making any demonstrable effort to alter his conduct.

{30} The hearing committee recommended that respondent be disbarred and not be permitted to work for any attorney until such time as he has been reinstated. The disciplinary board panel removed that restriction on employment from its recommendation of disbarment and also recommended that respondent's liability insurer be notified. As has been discussed with the Court previously, there is no confirmable way to determine the existence or non-existence of professional liability insurance. Disciplinary counsel asked this Court to remove that condition from its order and further asked this Court to reinstate the prohibition against respondent working for a lawyer while disbarred. This Court decided to remove the requirement to notify respondent's professional liability insurer of his disbarment but declined to restrict respondent's law-related employment at this time. As our order of disbarment reflects, however, if respondent violates any of the terms and conditions imposed and disciplinary counsel brings it to our attention pursuant to Rule 17–206(G), additional sanctions may be imposed, including restrictions on his law-related employment.

{31} Now, therefore, it is ordered that Drew Alan Neal hereby is disbarred from the practice of law pursuant to Rule 17–206(A)(1) NMRA 2003 for a minimum period of three (3) years;

{32} It is further ordered that respondent shall comply with all requirements of Rule 17–212 NMRA 2003 prior to being permitted to apply for reinstatement;

{33} It is further ordered that respondent shall promptly respond to all pending and future disciplinary complaints filed against him prior to being permitted to apply for reinstatement;

{34} It is further ordered that, prior to the filing any motion for permission to apply for reinstatement pursuant to Rule 17–214 NMRA 2003, respondent shall pay the costs of this matter in the amount of $1,233.71, with interest accruing from the date of this order at a rate of eight and three-fourths percent (8¾%) per annum. Said costs shall be reduced to a transcript of judgment;

{35} It is further ordered that should any of these terms and conditions be violated by respondent, disciplinary counsel shall bring such violation to the attention of this Court pursuant to Rule 17–206(G) and should respondent be found in contempt, this Court may impose additional sanctions including fines, further restrictions on his law-related employment, and further restrictions on any application for reinstatement; and

{36} It is further ordered that this order of disbarment shall be furnished to the Albuquerque Journal and Albuquerque Tribune newspapers, without comment, by the chief clerk of this Court.

{37} **IT IS SO ORDERED.**