Hon. JONATHAN ROSS, <br>
Hon. H. HENRY POWERS, } Assistant Judges. <br>
Hon. RUSSELL S. TAFT,

---

## IN RE BARNEY BARKER.

### *Habeas Corpus.   Exceptions.*

1. When a prisoner is discharged on *habeas corpus* from the custody of an officer holding him in arrest under a warrant issued by a justice of the peace, such officer is not entitled to exceptions; and if exceptions are allowed, they will be dismissed on motion in the Supreme Court. Ross, J., dissenting.
2. The officer holding the relator, was in no legal sense a party to the cause in which the relator was arrested, and had no right involved.   That was a criminal cause prosecuted in the name of the State.
3. The statute, R. L. s. 1385, allowing exceptions, has reference to civil cases only.   The allowance of exceptions to the officer when a prisoner is discharged is inconsistent with the object of the writ of *habeas corpus*.
4. *In re Cooper*, 32 Vt. 253, distinguished, the prisoner being the excepting party in that case.
5. R. L. ss., 1385, 1388, exceptions—questions of law pass to the Supreme Court.

1

HABEAS CORPUS. Heard March term, 1883, VEAZEY, J., presiding.

Judgment that the relator be discharged; to which decision, R. R. Mead, the constable of Rutland, having the relator in custody, excepted. The case was heard on a motion to dismiss the exceptions. The facts as to the relator's arrest and detention are stated in the next case in this volume.

*W. C. Dunton* and *James Barrett*, for Mead.

Exceptions will lie in this case.

Issues of law arising upon the trial of a cause by the County Court may pass to the Supreme Court for final decision upon exceptions. R. L., s. 1385.

But questions in law decided by the County Court arising upon trial by jury or upon motion in arrest in a prosecution by indictment or information for a crime or misdemeanor, shall, after verdict of guilty is returned, upon motion of the respondent, be allowed, etc. R. L., s. 1699.

This is not such a case as gives the respondent in a criminal cause the exclusive right to except as will readily be seen by inspecting sec. 1699, R. L.

*Prout & Walker*, for the relator.

The exceptions show that the petitioner was discharged from custody by the County Court. Of course the process, such as it was, upon which the petitioner was held, fell when he was discharged by superior authority. The proceedings before the justice came to a summary end last April. An order of reversal would not restore him to custody, or revive the defunct process. This court does not sit to pass upon hypothetical questions.

This is a proceeding in a criminal case. It turned upon a question of jurisdiction under an attempted criminal process. In substance it was like a demurrer to the complaint. Only the respondent can except. R. L., sec. 1699. And see sec. 1386. The provisions of sec. 1385 referred to in *In re Jesse Cooper*, 32 Vt. 253, do not apply. That was a contempt proceeding, where the petitioner was not discharged, and his

*In re* Barker.

exceptions were very properly entertained.    Perhaps exceptions by either party would be considered in a case involving a civil right, like the custody of an infant, etc.    But in criminal matters our statutes and the spirit of our judicial system make the decision of the County Court final, when against the State.    *Wyeth* v. *Richardson*, 10 Gray 240.

The opinion of the court was delivered by

POWERS, J.    The questions presented for consideration arise upon the relator's motion to dismiss the exceptions filed in the cause.

In the County Court the relator was discharged from the custody of Mead, the officer holding him in arrest under the warrant issued by Justice Cain, and to this judgment of the County Court, Mead filed exceptions.    The relator now insists that Mead had no right to file exceptions to said judgment; and, secondly, that nobody can file them in a case where the relator is discharged.

By sec. 1385, R. L., "issues of law, and questions of law, arising upon the trial of an issue of fact, by the court or jury, and placed upon the record by the agreement of the parties or the allowance of the court, determined by a County Court, may pass to the Supreme Court for final decision; but execution shall not, of course, be stayed, but may be stayed by order of the court, on consideration of the difficulty and importance of the question."

This section obviously relates to civil cases *inter partes*. The last paragraph, relating to a stay of execution, can have no appropriate meaning in any other view.

Again, by sec. 1388, and later sections in the same chapter, providing for the allowance of exceptions by the presiding judge, it conclusively appears that sec. 1385 has reference to civil cases between party and party; and such has always been the understanding of our courts and bar.

Mead, the officer holding the relator in custody, was in no legal sense a party to the cause in which the relator was arrested. That was a criminal cause prosecuted in the name of the State, by an informer.    If Mead could file exceptions to the order discharging the relator from custody, then every tipstaff, lucky

enough to hold a criminal warrant, could trot his prisoner seeking liberty from court to court interminably, notwithstanding the wish of the prosecuting officers to end the proceedings.

It was to remedy delays of this character that the *Habeas Corpus Act* of Charles II was enacted; and if the doctrine now contended for is to prevail, we are compelled to go back in history two hundred years, and to embrace the principles of personal liberty as expounded by the Stuart kings. This act of May 26, 1679, did not create this writ; it merely swept away the subterfuges adopted to delay and make it ineffectual. It provided for a speedy deliverance of prisoners, and is a part of the common law of Vermont. The subsequent legislation in England, and the whole course of legislation and judicial exposition in America, disclose the most jealous anxiety to make the writ a quick and summary procedure for relief from imprisonment.

The inqury in the County Court was whether the *process* under which the relator was held was valid Mead had no personal interest in the custody of the relator, and no right involved in such inquiry.

It is suggested that Mead should have the right to exceptions as he may be liable for a false imprisonment if the relator is discharged. This suggestion goes upon the ground that the judgment in the County Court would be conclusive upon him as an estoppel; but it is a fundamental doctrine that an estoppel must be mutual. If the judgment remanding the prisoner to his custody would bar a suit for false imprisonment, it follows that one discharging him would *ex vi termini* fix his liability. This, however, is not the law. The warrant under which Mead holds the relator was issued by a court of competent jurisdiction, and is regular on its face. The fatality, if any existed in the case, is found in the proceedings antedating the warrant, and for which the officer is not answerable. Mead then had no right to the exceptions allowed in this case.

There is, however, a broader doctrine applicable to the case which calls for exposition. Allusion has already been made to the office of the writ of *habeas corpus*. It is a common law

*In re* Barker.

writ; but the legislature of this and other states, has regulated the procedure under it. The court or judge to whom application. is made must issue the writ without delay, and on its return must examine the cause of imprisonment without delay; and may, in a summary way, hear the evidence pro and con relating to the imprisonment. The writ may be issued by the Supreme Court in session, or a judge thereof in vacation, or the County Court in session; and the hearing is the same before either tribunal. If the prisoner is remanded to custody by either, he may apply to the other. Indeed, as Baron PARKE says, in *Ex parte Partington*, 13 M. & W. 678, he may renew his application to every court in the kingdom having jurisdiction, until he obtains his liberty. It is not a controversy between parties, but an inquisition by the government, at the instance of the prisoner, to determine whether the right of personal liberty has been invaded. If controverted matters between individuals arise in the course of the inquiry, they arise only collaterally. Hurd on Habeas Corpus, 152. In this view of the purposes of the writ, it is clear that it is not a proceeding in which exceptions will lie to a judgment *discharging* the relator from custody; and so are the authorities.

*Wyeth* v. *Richardson*, 10 Gray 240 (1857), was *habeas corpus* before a single judge at chambers. On hearing, the relator was discharged; and exceptions were filed. CH. J. SHAW, in dismissing the exceptions, says: "The general principles of law are opposed to the allowance of exceptions in this case. The great purpose of the writ of *habeas corpus* is the immediate delivery of the party deprived of personal liberty. The allowance of exceptions would be inconsistent with the object of the writ. The consequence of allowing exceptions would be, either that all further proceedings be stayed, which would be wholly inconsistent with the purpose of the writ; or that the exceptions must be held frivolous, and judgment rendered *non obstante* for the discharge of the party; in which case the exceptions would be unavailing. The allowance of exceptions being thus inconsistent with the very purpose of the writ, the conclusion must

*In re* Barker.

be that the exceptions do not lie." This case is cited to show the *ground* on which the proceedings rest, which is the same whether they are instituted before a judge at chambers, or in court. CH. J. SHAW further declares that the Massachusetts statute, which provides that "in any trial or other proceeding either of a civil or criminal nature, at law or in equity," before this court when held by one justice, may be reserved and reported for the consideration of the full court, *applies to another class of cases.* The reasoning of this case shows that exceptions would not lie, had the case been pending in court, instead of before a judge at chambers. In *Knowlton* v. *Baker*, 72 Me. 202 (1881), this precise question arose in a case pending in the court. WALTON, J., says: "Exceptions do not lie to the discharge of a prisoner on *habeas corpus.* The object of the writ is to secure the right of personal liberty; and this can only be accomplished by prompt action and a speedy trial. To allow exceptions to the order of the court in term time, or to the order of a judge in vacation, discharging a prisoner, would necessarily result in considerable delay, and thus defeat one of the principal purposes of the writ, namely, a speedy release. True, errors may result from such hasty action, and parties interested in the imprisonment of the person released may thereby suffer. But the history of the writ shows that greater evils are liable to result from the want of speedy action."

The statutes of Massachusetts and Maine relating to the allowance of exceptions are in substance like ours.

· In the Federal courts the same doctrine prevails, although those courts have no common law jurisdiction. Am. Law Review, Vol. 18, No. 1. And it is the rule in all the states except as changed by statute. In *State* v. *Everett*, Dudley Law Rep.(S. C.), 295, appealed by the attorney general, the court say: "No decision that can be made by this court will recapture the defendant and bring him to justice." The prisoner had been discharged by the lower court, and the court very forcibly express the futility of their revisory power over that judgment. *Vide* remarks of CH. J. SHAW, *supra.*

*In re* Barker.

The case of *Ex parte·Cooper*, 32 Vt., 353, is claimed to be in conflict with this doctrine, and *seems* to give color to the claim. But it is to be noticed that the exceptions in. Cooper's case were taken by the relator; and the court remark that " justice to the person imprisoned requires that he should have the opportunity of having the decision of the County Court revised, *when the decision remands him to jail*, and the question involved is one merely of law." The court clearly recognize the doctrine advanced by Baron PARKE, *supra*, that the doors of another court should be open to a relator if the lower court *refuse* to release him. If the exceptions in *Cooper's* case had been filed by the State, or the sheriff having him in custody, we cannot believe in the light of authority or principle that they would have been sustained. There, as here, the commitment of the relator was in a criminal proceeding ; and there is, under our statute (not referred to, however, in Cooper's case), a propriety in sustaining the exceptions taken by the relator.

No case decided upon the principles of the common law can be found, we think, which warrants the allowance of exceptions in cases where the relator has been discharged ; and, accordingly, the exceptions are dismissed.

Dissenting opinion by

Ross, J. I am unable to concur with my brethren in holding that exceptions cannot be taken to the decision of the County Court in this case. It is a petition, by the relator, to the March Term, 1883, of the County Court, setting forth that he is in the custody of Roswell R. Mead, constable of the town of Rutland, under and by virtue of a complaint, warrant, and proceedings thereon, annexed to this petition, in an attempted prosecution for selling intoxicating liquor in violation of law, and which, he alleges, in his belief, are illegal, nugatory and void. He, therefore, prays that the writ of *hábeas corpus* may issue to inquire into the right of the officer to retain him in custody. The writ issued in due form to Mr. Mead, commanding him to have the relator before the court with the cause of his caption and detention. Mr. Mead made due return of the writ, and thereon

stated that the cause of taking and detaining the relator was the same alleged in the petition. The County Court, upon hearing, adjudged that the caption and detention of the relator, upon the complaint and warrant were illegal, and discharged him from the custody of the officer. Mr. Mead excepted to this adjudication. The exceptions were duly allowed and certified to this court. The relator now moves to have the exceptions dismissed as unauthorized by statute. This identical question was before this court in 1858, *In re Jesse Cooper* 32 Vt., 253. Mr. Cooper was then a prominent lawyer in Orleans county. While defending a criminal before a justice of the peace he was adjudged by the justice to be guilty of contempt of the court, and fined ten dollars. On his neglect and refusal to pay the fine a mitimus was issued, on which Mr. Cooper was taken into custody. He prayed out a writ of *habeas corpus*, directed to the officer having him in custody, returnable before the County Court, claiming that the justice had no authority to impose the fine and issue the mitimus. The officer set forth in his return the proceedings in the justice court resulting in issuing the mittimus. The relator demurred to the return. The County Court adjudged that Mr. Cooper was not unlawfully restrained of his liberty, and remanded him to the custody of the officer. To this decision the relator excepted. In this court, it was objected, that no exception to the decision of the County Court could be entertained, because proceedings in that court upon *habeas corpus* were not revisable in this court. It was held that the exceptions were properly before this court, and that secs. 43 and 44 of chap. 28, of Comp. Stat., authorized this allowance. These sections, with some slight verbal changes, made by the committee of revision, but which do not vary their legal effect, are the same as secs. 1385 and 1388, R. L. ALDIS, J., in pronouncing the decision, says : "Where, as in this case, the petition is brought, and the case heard in the County Court, and not by a single judge, we think the proceedings fall within the very terms of the statute. The words of the statute are very comprehensive. They are, 'All issues of law determined by the County Court,'

etc., chap. 28, sec. 43, Comp. Stat.; and 'Exceptions to the opinion of the County Court on any question of law,' etc., may pass to the Supreme Court, chap. 28, sec. 44. As this was a trial of an issue of law by the County Court, it clearly comes within the words of the act. It comes within the spirit of the law. Very important questions, affecting the liberties of the citizens of the State arise upon the trial of petitions in *habeas corpus*. In matters of such moment the law should be settled and uniform. Without revision by the Supreme Court the decisions of the different tribunals in which such questions are heard will become conflicting, and important rights involved will be left in uncertainty." This decision has stood unquestioned for more than twenty-five years as the law of the State, and as declaratory of the scope and construction of these sections of the statute, which have also, in substance, remained unchanged during that period. In my judgment it should not be lightly passed over or set aside. If the people of the State were unsatisfied with the construction and scope given to these sections of the statute, by that decision, it is reasonable to presume, they would, through the legislature, have manifested that dissatisfaction, and have made the statute speak the sense they desired to have placed upon it. Such a radical change at this time in the construction and scope of a statute, to my mind, savors strongly of judicial legislation. After so long an acquiescence by the people of the State, if I were satisfied the construction were erroneous, I should feel bound by it. Rights once declared by the highest judicial tribunal of the State, and long acquiesced in, should not be suddenly swept away by a counter decision, without the most cogent reasons. But I am not satisfied that any valid reason exists for changing the construction thus placed upon these sections of the statute. It is to be noticed that *In re Cooper, supra,* an issue of law was joined by the relator's demurrer to the officer's return stating the authority by which he held Mr. Cooper in custody. It was an issue between the relator and the officer. They were only parties to that issue upon the record. The judgment was between them, namely,

that the sheriff should still retain custody of Mr. Cooper's body. The town of Irasburgh was interested in the issue and judgment on the side of the officer, because the fine was payable into its treasury. In the case at bar, also, an issue of law is joined between the relator and the officer having him in custody. The relator in his petition avers that the complaint, warrant and proceedings thereon are illegal and void, and for this reason, insufficient to justify the officer in restraining him of his liberty. The officer by his return admits the complaint, warrant and proceedings thereon as stated in the petition; but claims that, in law, they justify him in restraining the relator from his liberty. This is the issue joined between the relator and the officer, the issue passed upon by the County Court. To it the relator and the officer are the sole parties of record. The officer is as much a party of record to this issue as the relator. He might, by denying in his return, that he restrained the relator of his liberty by force of the complaint, warrant and proceedings, have formed an issue of fact for trial by the County Court, upon evidence. It is none the less an issue between the relator, on the one hand, and the officer on the other, because others may be interested in its determination, and hence required to be notified of the pendency of the proceeding. The relator need not be the person whose liberty is to be inquired into. The petition may be preferred in behalf of the person restrained of his liberty *by any person*, sec. 1345, R. L. Hence, the relator in *habeas corpus* proceedings may not be the real party to be affected thereby. When brought at the relation of a person, other than the person whose liberty is in contention, if the decision of the County Court should be adverse to the relator, can there be a doubt that the exceptions must be taken in his name? In many cases one of the parties of record, to the issue joined and tried, is merely a nominal party. Instances will readily occur to the mind of anyone; as when an attorney brings a suit in his own name upon a negotiable promissory note or bill of exchange for collection merely; or, where an officer is sued for having, at the direction of the plaintiff, attached property owned and

claimed by a person other than the debtor ; or where a defendant in a suit concerning the title to real estate vouches in his grantee to defend the title under the latter's covenant of warranty ; but it has always been held that the party to the record, though nominal, must take exceptions to any ruling or decision adverse to the interests he represents. Hence Mr. Mead, though a nominal party, is the proper party to take exceptions to rulings adverse to the interests he represents. The real party in interest, unless also a party of record, cannot have exceptions allowed in his name. Such an allowance would be a plain departure from the record. Neither the State nor H. W. Love, the informer, was a party to the record, though both interested in the issue joined between the relator and Mr. Mead. The judgment of the County Court is also between the relator and Mr. Mead—in favor of the relator discharging him from custody—against Mr. Mead, denying his right and authority under the complaint and warrant to restrain the relator of his liberty. It might have been the reverse, in favor of the officer and against the relator. Upon the petition and writ the County Court could not have rendered judgment between any other parties. Nor can it be said that Mr. Mead is a wholly uninterested and merely a nominal party to this issue and judgment. If the justice of the peace had no lawful authority to issue a warrant for the arrest of the relator, upon the complaint of a private informer, his arrest and detention were as if made without a warrant, and all persons engaged therein, even the magistrate, are liable for a false imprisonment, as held by this court at the last general term in *Vaughn* v. *Congdon*,* and in several previous cases. It does not, therefore, follow that Mr. Mead may not be deeply interested in the decision which the County Court made against him in regard to his right to detain the relator in his custody, upon the complaint, warrant, and proceedings before the justice. Ought he not to have the right to have the decision of the County Court revised, and, if found erroneous, reversed on exceptions to this court ?

*Post.*

But it is contended that this is a criminal proceeding, or a part of such proceeding, in which the respondent alone has the right to exceptions. I do not so regard it. Were it so, the relator even, under the terms of the statute allowing exceptions to the respondent, would not be entitled to exceptions. The language of the statute is not broad enough to give such right or relief to a respondent in *habeas corpus* proceedings. Sec. 1699, R. L., is: "Questions of law decided by the County Court, arising upon demurer, or upon trial by jury, or upon motion in arrest, in a prosecution by indictment or information for a crime or misdemeanor, shall, after verdict of guilty is returned, upon motion of the respondent,. be allowed," etc. Observe, it is only in a prosecution by indictment or information, that such exceptions are allowed to the respondent. Surely this petition for *habeas corpus* is not a prosecution by indictment or information; but an attempt to escape such prosecution, because alleged to have been illegally commenced. Doubtless, the language of sec. 1699 pressed the court *In re Cooper*, *supra*; and the court saw there was no relief in *habeas corpus* proceedings, for relator or respondent, by exceptions, under this section of the statute. Hence the necessity of having secs. 1385 and 1388, which relate to questions of law arising on the trial of a civil cause, apply. There is manifest propriety in holding, as this court did *In re Cooper*, that the action of the County Court on such important matters as frequently arise on petitions for *habeas corpus* should be subject to revision on exceptions, and that it is within the broad and appropaiate language of the last named sections of the statute; more especially when not a word appropriate to giving such relief can be found in the section according the right of exceptions to a respondent in a prosecution by indictment or information. The relator's petition for *habeas corpus*, is not an offshoot, nor a part, of the prosecution commenced before the magistrate by the private informer, but an independent proceeding. and process, peculiar, summary, born of necessity in the interest of personal liberty. In my judgment, it is both a misnomer and a degrada-

tion to denominate it a criminal prosecution, or some fractional part of such a prosecution.    It is of a higher nature than all such prosecutions, seizes upon and brings them into summary judgment, and if found wanting of lawful authority, crushes and casts them aside as merest trifles.    It is one of the highest processes known to the law.    It is manifest that the action of the County Court in its use should be subject to revision in this court.    That the State was not entitled to exceptions in the prosecution pending before the magistrate, if the relator had been content to have had his, the State's and the private informer's rights, settled in that prosecution, in my judgment, does not touch the question in contention.    As well might it be held that the same rights and remedies must be accorded to a party in assumpsit as in trover, in an action of law, as in proceedings in equity, or that his rights in the former are controlled by his rights under the latter.    The rights and remedies of the relator in the prosecution before the magistrate are diverse, distinct, independent, and wholly unlike his rights on his petition for *habeas corpus*.   While *habeas corpus* proceedings necessarily touch upon and inquire into legal proceedings, both criminal and civil, in and of itself, the writ, and the proceeding required to obtain it, as well as the proceedings under it, are in the highest degree civil, and always *inter partes*, namely : the relator petitioning for the liberty of the imprisoned, and the person restraining the imprisoned one.   That others, outside the parties to the record, may be interested in the result, does not vary the rights of such parties to exceptions, when the trial is by the County Court.    The interests of such outside persons come, and necessarily are brought, into the contention in the names of the parties to the record.    Holding these views, of the nature of *habeas corpus* proceedings, of the parties thereto, of the statutes regulating and conferring the right to exceptions, I am unable to concur in the judgment denying the right to exceptions to Mr. Mead.

Note by Ross, J.    Since writing the foregoing opinion my eye fell upon the syllabus of a case in Am. L. Rev., No. 6, vol. 9, p. 1020, as follows:   "'Suing out a writ of *habeas corpus* is a civil proceeding, although the object of the petitioner be to be released from custody under a criminal charge.    In such a case the Federal Supreme Court has no jurisdiction on a certificate of division." *Ex parte Tom Tong,* Sup. Ct., U. S., Va. L. J., October, 1883.   (108 U. S. 556.)