871 P.2d 981

**In the Matter of Andrew L. LICHTENBERG**

**An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 21820.**

Supreme Court of New Mexico.

March 23, 1994.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

William E. Flinn, Albuquerque, for respondent.

**OPINION**

PER CURIAM.

This matter is before the Court following an order to show cause issued to Andrew L. Lichtenberg pursuant to SCRA 1986, 17–210 (Repl.Pamp.1991), after it was brought to the Court's attention that Lichtenberg has been suspended from the practice of law by the Vermont Supreme Court for a period of six (6) months, effective January 1, 1994. For reasons set forth below, we decline to impose identical discipline in this instance.

Lichtenberg was admitted to the practice of law in this state on February 21, 1991, and has practiced law in New Mexico since September 1991. Prior to his move to New Mexico, he engaged in the practice of law in Vermont, where he was admitted to that bar in 1989. The conduct giving rise to his Vermont suspension occurred in 1990 while he was a relatively new attorney in solo practice.

In late 1989 or early 1990, Lichtenberg filed a civil rights action against the Vermont Department of Corrections on behalf of an inmate who alleged he had been physically abused by guards while in custody. Raymond Foy, a guard at the correctional center at the time of the alleged abuse to Lichtenberg's client, was named by the defense in the early summer of 1990 as a potential witness in response to discovery motions. In September 1990, Foy was given Lichtenberg's name by the Lawyer Referral Service of the Vermont Bar Association as someone who might assist him with a landlord/tenant problem he was having.

Several days prior to his initial appointment with Foy, Lichtenberg revealed to defense counsel in the civil rights action that he

was meeting with Foy and wondered aloud whether this was the same Foy who was a defense witness in the civil rights case. Upon meeting with Foy, Lichtenberg reviewed an intake form wherein Foy had listed his place of employment, and from this information became aware of the possibility of a conflict of interest. Lichtenberg did not immediately mention this to Foy, but instead listened while Foy described disabling emotional problems that recently had led him to take a medical leave of absence from his employment at the correctional center. Lichtenberg then revealed that he was representing the plaintiff in the civil rights action. Lichtenberg was not retained by Foy to represent him in the landlord/tenant matter.

Prior to meeting with Foy, Lichtenberg had received a negative response to an interrogatory in the civil rights case, which asked whether any of the guards at the correctional center had any emotional disorders. After his meeting with Foy, he requested another response to that particular interrogatory and filed a motion to compel the answer, which was denied by the court. Lichtenberg then issued a second set of interrogatories wherein he repeated the same question and also asked "Why is [Foy] on leave from the correctional facility? Who are his present physicians and psychotherapists?" He subsequently subpoenaed Foy to a deposition, also attended by his client, where he asked Foy repeated questions about his mental and emotional health over the objections of defense counsel. The Vermont court ultimately granted a defense motion to disqualify Lichtenberg from further participation in the civil rights case.

After disciplinary proceedings, wherein Lichtenberg was accorded notice and an opportunity to be heard, the hearing panel found that Lichtenberg's conduct had caused harm to Foy and that he had not accepted responsibility for his conduct until the conclusion of the hearing. The panel also found, however, that Lichtenberg was very inexperienced and had not "acted with a bad heart." The panel concluded that Lichtenberg had committed violations of DR 4–101(B)(1), (2), and (3) of the Vermont Code of Professional Responsibility, which prohibit a lawyer from knowing-

ly revealing the confidence or secret of a client or from using the confidence or secret to the disadvantage of the client or to the advantage of the lawyer or a third person. The panel recommended a suspension of three (3) months; however, the Vermont Supreme Court increased the suspension period to six (6) months on the ground that a suspension of less than six (6) months serves only to inconvenience the public.

■ When a member of this bar has been disciplined in another jurisdiction for acts of misconduct, this Court has the authority to impose identical discipline. *See* SCRA 1986, 17–210. The respondent-attorney, however, has the right to request a modification of the discipline imposed in a sister jurisdiction if it clearly appears from the face of the record that

> (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (2) there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the supreme court could not accept as final the conclusion on that subject; (3) the imposition of the same discipline by the supreme court would result in grave injustice; or (4) the misconduct established has been held by the supreme court to warrant substantially different or greater discipline.

SCRA 1986, 17–210(C).

■ While there are some differences in the language of Vermont's rules, which are patterned after the Code of Professional Responsibility, and our Rule 16–106, which follows the newer ABA Model Rules of Professional Conduct, for purposes of this case we hold that Lichtenberg's violations of the Vermont rules constitute a violation of our Rule 16–106. We also note that while Rule 16–106 does not specifically address confidences revealed by prospective clients (as the Vermont rule does), the Preamble to the Rules of Professional Conduct, SCRA 1986, 16–101 through –805 (Repl.Pamp.1991 & Cum.Supp. 1993) makes clear that the duty of confidentiality under this rule may attach "when the lawyer agrees to consider whether a client-lawyer relationship shall be established."

This Court previously has not had occasion to discipline a New Mexico attorney for violation of the ethical rules governing the confidentiality of information imparted to an attorney by a client or a prospective client, a fact that reflects positively on the members of this bar. Consequently, we cannot say that Lichtenberg's conduct has been held by this Court to warrant substantially different discipline. A review of other decisions issued by this Court, however, indicates that we rarely have imposed the sanction of suspension on a newly admitted attorney absent a finding that the attorney engaged in intentional misconduct involving dishonesty. *See, e.g., In re Lindsey,* 112 N.M. 17, 810 P.2d 1237 (1991). We note as well that the Vermont hearing panel found certain mitigating factors and recommended a shorter period of suspension.

This is not to say that we would never impose a period of suspension for a violation of Rule 16–106. Members of the public who share their confidences and secrets with an attorney are entitled to have those confidences and secrets held inviolate except in certain unusual circumstances. In order for an attorney to develop all facts necessary to effective representation, the client or potential client must be encouraged to communicate fully and candidly with the attorney even as to embarrassing or legally damaging subject matter. *See* ABA Standing Committee on Ethics and Professional Responsibility, *Formal Opinion 90–358* at 2.

IT IS THEREFORE ORDERED that Andrew L. Lichtenberg be, and he hereby is, suspended indefinitely from the practice of law for a minimum period of six (6) months pursuant to SCRA 1986, 17–206(C) effective April 1, 1994.

IT IS FURTHER ORDERED that the imposition of said suspension be deferred and that Lichtenberg be placed on probation pursuant to Rule 17–206(B)(1) for a period of one (1) year beginning April 1, 1994, on the following terms and conditions:

(1) That he meet with his probationary supervisor on a regular basis as directed by his supervisor and accept counseling from said supervisor on the ethical responsibilities inherent in the attorney-client relationship and other responsibilities of an attorney to clients, opposing parties, and courts. Daniel A. McKinnon, III, is appointed to serve as Lichtenberg's supervisor during his period of probation;

(2) That he reimburse McKinnon at the hourly rate of $75.00 plus gross receipts taxes for the time spent in counseling him;

(3) That he respond promptly to any requests for information by the office of disciplinary counsel regarding any complaint that may be filed against him;

(4) That he commit no violations of any of the Rules of Professional Conduct or the rules of any court before which he may practice; and

(5) That he take and receive a passing grade on the Multistate Professional Responsibility Examination.

Any failure by Lichtenberg to abide by any of the terms and conditions of his probation shall be brought to the attention of the Court by disciplinary counsel pursuant to Rule 17–206(G) and, if found to be in contempt of this order, his probation may be revoked and the foregoing period of suspension or other sanctions imposed.

This deferral of suspension shall terminate automatically (*i.e.,* the suspension shall be revoked) upon the expiration of the one-year period of probation ordered above, provided Lichtenberg successfully completes and satisfies all conditions of probation.

IT IS FURTHER ORDERED that this opinion be published in the State Bar of New Mexico *Bar Bulletin* and the *New Mexico Reports.*

In that no costs were incurred by the Disciplinary Board in this matter, none are assessed against Lichtenberg.

IT IS SO ORDERED.

FROST, J., dissents.

BACA, J., not participating.